**Affirmed and Opinion filed April 11, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00352-CR

**PAUL ANTHONY NIX, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1301654**

## O P I N I O N

Appellant pleaded guilty to one count of unlawfully owning and operating a pain management clinic. The trial court entered an order of deferred adjudication and placed appellant on a three-year period of community supervision. In two issues, we are asked to decide whether the trial court had jurisdiction over the case, and if so, whether it erred by denying appellant's motion to quash. Finding no error, we overrule appellant's issues and affirm the judgment of the trial court.

**PLEA TO THE JURISDICTION**

In his first issue, appellant challenges the trial court's denial of his plea to the jurisdiction. Appellant essentially contends that the State charged him with a misdemeanor rather than a felony, and that his case therefore belonged in county criminal court rather than state district court. *Compare* Tex. Code Crim. Proc. art. 4.05 (providing that state district courts have original jurisdiction in all felony cases and certain misdemeanors not implicated here), *with* Tex. Code Crim. Proc. art. 4.07 (providing that county criminal courts have original jurisdiction in all misdemeanors). Such jurisdictional issues are governed by the Texas Constitution and the statutory procedures relating to the use of charging instruments. *Kirkpatrick v. State*, 279 S.W.3d 324, 327 (Tex. Crim. App. 2009). Our review is de novo. *See id.*

"The presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Tex. Const. art. V, § 12(b). The law does not require that the charging instrument be presented strictly without defects. A felony court may still acquire jurisdiction over a case even though the indictment, because of its defects, alleges only a misdemeanor. That was the case in *Kirkpatrick*, where the State failed to allege the elements that would elevate the charge of forgery from a misdemeanor to a felony. *See Kirkpatrick*, 279 S.W.3d at 325. The court of criminal appeals explained that the test for assessing the trial court's jurisdiction is not whether the indictment actually alleges a felony, but whether the indictment, despite its substantive defects, is "capable of being construed as intending to charge a felony (or a misdemeanor for which the district court has jurisdiction)." *Id.* at 328 (citing *Teal v. State*, 230 S.W.3d 172, 181 (Tex. Crim. App. 2007)). The indictment in *Kirkpatrick* satisfied this test because a felony offense existed and the defendant had notice that the State intended to charge her with the felony:

specifically, the indictment was returned to a felony court, it described the offense as a felony in the third degree, and it provided the defendant with citations to the relevant penal statutes. *Id.* at 329.

Following *Kirkpatrick*, we must now determine whether the indictment in this case is capable of being construed as intending to charge a felony. With the formal parts omitted, the indictment alleges that:

> Paul Anthony Nix, hereafter styled the Defendant, heretofore on or about November 30, 2010, did then and there unlawfully, intentionally and knowingly own and operate a pain management clinic, namely North Houston Wellness & Weight Loss Clinic, at 12100 Veterans Memorial, Houston, Harris County, and the Defendant was not a physician who practices in the State of Texas under an unrestricted license to practice medicine.

The indictment describes the offense as a felony charge, and it was returned to a court with felony jurisdiction. Although no statutes were cited, the language of the indictment closely tracks that of section 168.102 of the Texas Occupations Code. This section is entirely regulatory in nature. It mandates an application process for obtaining the certification required of pain management clinics. It also provides that a clinic "must be owned and operated by a medical director who is a physician who practices in this state under an unrestricted license."[1] *See* Tex. Occ. Code § 168.102(a).

The Code does not expressly state whether a person commits a felony or a misdemeanor when he violates Section 168.102. To determine whether a felony offense exists, we must accordingly look to guidance from other provisions. Our

---

[1] At the time of the alleged offense, the statute describing this requirement was section 167.102 of the Texas Occupations Code. *See* Act approved June 19, 2009, 81st Leg., R.S., ch. 775, § 1, 2009 Tex. Gen. Laws 1963, 1964. In 2011, the legislature reorganized several provisions from Chapter 167, including Section 167.102, under Chapter 168. *See* Act approved May 19, 2011, 82d Leg., R.S., ch. 91, § 27.001(45), 2011 Tex. Gen. Laws 449, 529.

analysis requires that we engage in matters of statutory interpretation. When construing a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *May v. State*, 919 S.W.2d 422, 423 (Tex. Crim. App. 1996). We interpret statutes according to the plain and ordinary meaning of the words used, unless doing so yields an absurd result. Tex. Gov't Code § 311.011; *Ex parte Ervin*, 187 S.W.3d 386, 388 (Tex. Crim. App. 2005).

Appellant argues that the legislature intended to charge this offense as a misdemeanor, not a felony. His argument is based on a reading of another provision that generally establishes a person's criminal liability under the subtitle regulating physicians. That provision, Section 165.151, states as follows:

> (a) A person commits an offense if the person violates this subtitle or a rule of the board.

> (b) If another penalty is not specified for the offense, an offense under this section is a Class A misdemeanor.

Tex. Occ. Code § 165.151.

Appellant's argument proceeds like this: because Section 168.102 does not prescribe a penalty, his criminal liability must be determined by Section 165.151. This general statute provides only for misdemeanor offenses, not felonies. Therefore, the district court, which is primarily a felony court, was not vested with jurisdiction, and it erred by denying his jurisdictional plea.

The State counters that the indictment alleges a felony and urges that we read Section 168.102 in conjunction with Section 165.152, rather than Section 165.151. Section 165.152 states:

> (a) A person commits an offense if the person practices medicine in this state in violation of this subtitle. . . .

> (c) An offense under Subsection (a) is a felony of the third degree.

4

*Id.* § 165.152. Thus, the State suggests, to operate a pain management clinic, a person must necessarily be practicing medicine.

"Practicing medicine" is a defined term under the Occupations Code. It means:

> the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:
>
>> (A) publicly professes to be a physician or surgeon; or
>>
>> (B) directly or indirectly charges money or other compensation for those services.

*Id.* § 151.002(a)(13). The State contends that the operation of a pain management clinic meets this definition for the following reasons. First, by owning and operating a clinic, a person must be in the business of offering to treat another person's physical injury or condition. *See id.* § 168.001 (defining a pain management clinic as a facility for which most patients are issued a prescription for opioids, benzodiazepines, and other named drugs). Next, by representing himself as an owner, the person must also profess to be a licensed physician or surgeon, because only a physician may legally own and operate such a facility. *See id.* §§ 151.002(a)(13)(A), 168.102(a); *see also id.* § 151.002(b) (stating that the terms "physician" and "surgeon" are synonyms). Finally, because of the person's position, he would also be expected to charge some sort of compensation for his services, whether directly or indirectly. *See id.* § 151.002(a)(13)(B).

We agree with the State's interpretation. Section 168.102 is not like an ordinary penal statute; it does not begin with that familiar hallmark, "A person commits an offense if . . . ." The statute is instead regulatory in nature, generally prescribing the procedures for certifying a pain management clinic. When read in

5

isolation, the statute does not establish that a person is liable for failing to comply with its terms. Liability is governed by a separate chapter under the Code, where the legislature provided for a comprehensive range of administrative, civil, and criminal penalties. *See id.* §§ 165.001–.160. The parties dispute which statute should govern the criminal penalty in this case, Section 165.151 or Section 165.152. Facially at least, both statutes could be read as proscribing the same conduct alleged in the indictment. *Compare id.* § 165.151(a) (proscribing in general terms a violation of any statute or administrative rule), *with id.* § 165.152(a) (proscribing the unauthorized practice of medicine). However, when two statutes address the same purpose or object, and one deals with the subject in general terms and the other in a more detailed way, we presume that the legislature intended for the more specific statute to control. *See Juarez v. State*, 308 S.W.3d 398, 405 (Tex. Crim. App. 2010); *State v. Vasilas*, 253 S.W.3d 268, 272–73 (Tex. Crim. App. 2008). Therefore, a strict application of Section 165.151 would not be appropriate.

Section 168.102 is best read in conjunction with Section 165.152, which specifically proscribes the unauthorized practice of medicine. The act of owning and operating a pain management clinic necessarily contemplates the act of practicing medicine, as that term has been defined under the Code. Indeed, this exact construction is promulgated as a rule under the Texas Administrative Code: "Ownership of a pain management clinic is the practice of medicine." 22 Tex. Admin. Code § 195.2(f); *see also* Tex. Gov't Code § 311.023(6) (providing that a court may consider administrative constructions when interpreting a statute).

We conclude that owning and operating a pain management clinic constitutes the practice of medicine. Appellant was indicted for unlawfully owning and operating a pain management clinic. The indictment effectively charges him

with practicing medicine in violation of the Code, a third-degree felony. The district court was accordingly vested with subject-matter jurisdiction.

## MOTION TO QUASH

In his second issue, appellant challenges the trial court's denial of his motion to quash. His complaint is that the indictment fails to adequately specify the activities constituting the charged offense. This issue basically disputes the sufficiency of the indictment, which presents us with a question of law. Accordingly, our review is de novo. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).

The accused is entitled to fair notice of the charged offense. Tex. Const. art. I, § 10. The charging instrument must convey this notice sufficiently so that the accused may prepare his defense. *State v. Barbernell*, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008). An indictment must set forth the offense "in plain and intelligible words." Tex. Code Crim. Proc. art. 21.02(7). An indictment is deemed sufficient if it charges the commission of an offense "in ordinary and concise language of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged." Tex. Code Crim. Proc. art. 21.11.

Generally, an indictment is legally sufficient if it tracks the language of the statute in question. *Moff*, 154 S.W.3d at 602; *State v. Edmond*, 933 S.W.2d 120, 127 (Tex. Crim. App. 1996). An indictment must go beyond the statutory language only when the statute is not "completely descriptive of the offense." *Haecker v. State*, 571 S.W.2d 920, 921 (Tex. Crim. App. [Panel Op.] 1978). The statutory language is not completely descriptive of the offense if it uses an undefined term of indeterminate or variable meaning. *Barbernell*, 257 S.W.3d at 251; *State v. Mays*, 967 S.W.2d 404, 407 (Tex. Crim. App. 1998). In such cases, more specific

pleading is required. *Mays*, 967 S.W.2d at 407. Likewise, when a statute defines the manner or means of commission in several alternative ways, an indictment will fail for lack of specificity if it neglects to identify which of the statutory means it addresses. *Id.*

Case law has traditionally focused on charging instruments that track the language of penal statutes. *See, e.g.*, *Barbernell*, 257 S.W.3d at 249 (driving while intoxicated); *Moff*, 154 S.W.3d at 600 (misapplication of fiduciary property); *Mays*, 967 S.W.2d at 405 (barratry); *Edmond*, 933 S.W.2d at 121 (official oppression); *Haecker*, 571 S.W.2d at 920 (cruelty to animals). This case is unusual because, as we have already mentioned, Section 168.102 is more regulatory than penal. On its face, Section 168.102 does not create an offense. A person's criminal liability is established only when that statute is read in conjunction with Section 165.152. The indictment, however, does not track the language of Section 165.152; it does not, for instance, expressly allege that appellant practiced medicine in violation of the Code. Instead, it approximately tracks the language of Section 168.102, alleging that he owned and operated a pain management clinic when he was not a physician licensed to practice medicine.

In his motion to quash, appellant argued that the indictment was not sufficient even though it seemed to track the language of Section 168.102. He argued:

> The Indictment fails to adequately specify the activities that the Government allegedly contends constitute owning and operating a pain management clinic. The Indictment does not explain, for example, whether the defendant was the actual owner of the business, a shareholder of the corporation that owned the business, whether the defendant was a manager employed by the business, or whether the defendant treated any patients at the clinic.

8

Appellant did not phrase his argument below in terms of Section 165.152. He was apparently unaware that his charged offense constituted the practice of medicine until the State responded to his motion to quash.

In his brief, appellant contends that the indictment is insufficient because "nowhere . . . does it allege that appellant is practicing medicine." Appellant insists that if the State wished to charge him with unlawfully practicing medicine, then the indictment should have been drafted in those terms, and it should have specifically alleged the manner and means of how he practiced medicine. The State contends that this argument is waived because it does not comport with appellant's argument in the trial court. According to the State, "the purpose of requiring specificity in an indictment is to provide a defendant with effective notice of the *acts* he allegedly committed, not to advise the defendant on matters of statutory construction regarding the statutes applicable to the charged offense."

In his brief, appellant generally argues that the indictment insufficiently alleged the manner and means in which he committed the offense. If we liberally construe his appellate argument, appellant's complaint seems to relate to his contention below. We therefore address it.

The indictment clearly alleges that appellant violated Section 168.102 by engaging in proscribed conduct, to wit: by owning and operating a pain management clinic when he was not a licensed physician. Appellant argued in his motion to quash that the indictment did not adequately identify how he "owned and operated" the clinic. Even though the Code does not assign any particularized definitions to these words, we do not believe that the terms are of "indeterminate or variable meaning." *Cf. Daniels v. State*, 754 S.W.2d 214, 220 (Tex. Crim. App. 1988) (concluding in a delivery of marijuana case that the phrase "constructive transfer" was not so vague or indefinite as to deny the defendant effective notice of

the acts he allegedly committed); *see also* Black's Law Dictionary 1130 (7th ed. 2004) (defining "own" as "to have or possess as property; to have legal title to"); Webster's Third New International Dictionary 1580 (Philip Babcock Gove ed., 1993) (defining "operate" as "to perform a work or labor: exert power or influence: produce an effect").

Generally, added specificity is required in the indictment only where "additional information . . . is reasonably necessary for the defense to prepare its case." *Moff*, 154 S.W.3d at 603; *see also Thomas v. State*, 621 S.W.2d 158, 161 (Tex. Crim. App. 1980) (op. on reh'g) ("The general rule is that a motion to quash will be allowed if the facts sought are *essential* to giving notice." (emphasis added)); *Ferguson v. State*, 622 S.W.2d 846, 850 (Tex. Crim. App. 1980) (op. on reh'g) (holding in controlled substance case that greater particularity was needed where indictment failed to specify the legal theory of delivery, the statute described various means of delivery, and delivery is "the very heart of the offense"). Some scholars have suggested that the "specification of manner and means may be limited to that conduct constituting the gravamen of the offense." *See* George E. Dix & John M. Schmolesky, Texas Practice Series: Criminal Practice and Procedure § 25:142 (3d ed. 2011). In this case, owning and operating a clinic is not the gravamen of the offense. There is nothing inherently criminal about owning and operating a clinic. The heart of this offense is that appellant allegedly owned and operated a clinic *while not being a physician licensed to practice medicine in this state*. Appellant received fair notice of this allegation. He could have reasonably prepared his case without a specific allegation of such peripheral facts as whether he was the manager of the clinic or its actual owner. *Cf. Barbernell*, 257 S.W.3d at 254 (concluding that definitions of "intoxicated" were evidentiary

and did not need to be alleged where the DWI statute focused not on the act of becoming intoxicated, but on the act of the defendant while intoxicated).

The indictment closely tracked the language of Section 168.102. It also identified the clinic by name and address, and described appellant's conduct in plain and intelligible terms. We conclude that the indictment was sufficiently specific to apprise appellant of the charge against him. *See* Tex. Code Crim. Proc. art. 21.04 (stating that the indictment should provide the accused with enough certainty "to plead the judgment that may be given upon it in bar of any prosecution for the same offense"). The trial court did not err by overruling his motion to quash.

## CONCLUSION

Appellant's two issues are overruled and the judgment of the trial court is affirmed.


/s/     Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.

Publish — Tex. R. App. P. 47.2(b).